**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DENNIS MCKEITHAN,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　Civil Action No. 06-965
JEFFREY BEARD, SECRETARY OF　　　)　Judge Lancaster
CORRECTIONS, *et al.*,　　　　　　)　Magistrate Judge Caiazza
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants Putnam, Erickson, Wright, Wilson, Scire, Zaken, Gallucci, Galicki, Echowski, Van Fossen, McKeown, SGT. Layou, Mataloni, Tretinik, Abrams, Beard, Schaffer, Couterier, Stickman, Burke, Wynder and Lyons (Doc. 59) be granted.

### II. REPORT

Dennis McKeithan ("McKeithan" or "the Plaintiff") is a state prisoner currently incarcerated in the State Correctional Institution at Fayette ("SCI-Fayette"). His Complaint, filed pursuant to the provisions of 42 U.S.C. §1983, details a litany of alleged constitutional violations occurring during his incarceration at SCI-Fayette and the State Correctional Institution at Retreat ("SCI-Retreat"). Presently before the court is a Motion for Summary Judgment (Doc. 59) filed by

Defendants Putnam, Erickson, Wright, Wilson, Scire, Zaken, Gallucci, Galicki, Echowski, Van Fossen, McKeown, SGT. Layou, Mataloni, Tretinik, Abrams, Beard, Schaffer, Couterier, Stickman, Burke, Wynder and Lyons – all employees of the Pennsylvania Department of Corrections. The Plaintiff has responded to the Motion (Doc. 88), and it is now ripe for disposition.

## A.  **Legal Standard**

McKeithan's burden in response to a well-pleaded motion for summary judgment is to present "specific facts showing that there is a *genuine issue for trial* . . . or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(internal citation and quotation omitted, emphasis added).

## B. **The Basis for Defendants' Motion**

The Defendants raise several arguments in support of their Motion.  These arguments will be addressed seriatim.

## C. **The Analysis**

### 1. Confinement in the LTSU and SMU.

The Plaintiff alleges that he was placed in the Long Term Segregation Unit (LTSU) at SCI-Fayette in May, 2005, and that he was transferred to the Special Management Unit (SMU) at SCI-

Fayette in January, 2007[1]. The Plaintiff alleges that both his initial placement in the LTSU, and later in the SMU, as well as his continued placement in those units, deprived him of due process of the law, violated the Eighth Amendment, deprived him of equal protection of the laws, and that the restriction on publications in the LTSU violated his First Amendment rights. The Plaintiff also alleges that his placement was in retaliation for his filing of grievances.

### a. The Due Process Claim

Jacobs' claim concerning the decisions by which he was placed in the LTSU and the SMU arise under the Due Process Clause of the Fourteenth Amendment. In order to state a claim, Jacobs must first set out facts which demonstrate that he had a protected liberty interest impaired by the Defendants' actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). Once the Court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Morrissey, 408 U.S. at 481.

The Court of Appeals for the Third Circuit has held that long-term placement in administrative custody raises procedural due process protections under the analysis mandated by Sandin v.

---

1. In fact, the LTSU was discontinued and replaced by the SMU at this time.

Conner, 515 U.S. 472 (1995). See Shoats v. Horn, 213 F.3d 140 (3d Cir. 2000). Nonetheless, relying upon Hewitt v. Helms, 459 U.S. 460 (1983), the Third Circuit Court found that informal, periodic review of the prisoner's administrative custody status satisfies the requirements of due process. Shoats, 213 F.3d at 147.

Here, the moving Defendants have presented a wealth of evidence which supports the decision in May, 2005, to place the Plaintiff in the LTSU. This includes a "continuous history of violent behavior" including past and recent assaults on corrections officers (Doc. 59, Ex. 3). This behavior occurred consistently since 1984 (Id.). There is also a record of the Plaintiff being separated from at least ten other inmates, and five corrections officers due to his violent conduct (Id.). A report from a psychologist notes the Plaintiff's "Antisocial Personality Disorder" and "Psycopathy" (Doc. 59, Ex. 5). Other staff noted that the Plaintiff had previously been placed in administrative custody on more than one occasion, but that release to general population had invariably led to a return to "assaultive/violent" behavior (Doc. 59, Ex. 6).

In this case, then, the same analysis set out in Shoats is applicable. While the permanency of McKeithan's placement in the LTSU and the SMU appears to satisfy the requirement that a liberty interest be implicated, McKeithan does not contest that he has been provided with periodic review of his status. In

-4-

fact, an August 17, 2005 periodic review of his placement details
an astonishing history of violence while incarcerated. This
history, dating back more than two decades, was capped off by the
Plaintiff's March, 2005 assault on two corrections officers
during which he used a scrub brush handle to beat one officer,
causing serious injury, after which he threw a bucket containing
cleaning chemicals at a second officer (Doc. 59, Ex. 7).

McKeithan asserts generally that the Defendants relied upon
inaccurate and misleading information in denying him release to
the general population  -but this is only argument; *i.e.,* he
disagrees with the Defendants' decision to place him in
administrative custody. McKeithan argues at length that
virtually his entire record of misbehavior in prison is either
manufactured or exaggerated. In this respect, the Supreme Court
explained the scope of discretion allowed to prison
administrators with inmates such as McKeithan:

> In assessing the seriousness of a threat to
> institutional security, prison administrators
> necessarily draw on more than the specific facts
> surrounding a particular incident; instead, they
> must consider the character of the inmates
> confined in the institution, recent and
> longstanding relations between prisoners and
> guards, prisoners inter se, and the like. In the
> volatile atmosphere of a prison, an inmate easily
> may constitute an unacceptable threat to the
> safety of other prisoners and guards even if he
> himself has committed no misconduct; rumor,
> reputation, and even more imponderable factors may
> suffice to spark potentially disastrous incidents.
> The judgment of prison officials in this context,
> like that of those making parole decisions, turns

> largely on purely subjective evaluations and on
> predictions of future behavior.

Hewitt, 459 U.S. at 474. Thus, as the Third Circuit Court noted in Shoats, a prisoner may be placed in administrative confinement even where no misconduct has occurred, and all that is required is that the prison provide an opportunity for the prisoner to contest the "purely subjective evaluation" of his dangerousness. Again, the holding in Shoats is instructive: "[b]ecause [the inmate] has failed to provide any support for his assertions that his PRC reviews were constitutionally inadequate, we hold that the periodic reviews conducted by the PRC . . . comport with the minimum constitutional standards for due process." Shoats, 213 F.3d at 147. Here, it is uncontested that the prison has provided the necessary process. Thus, McKeithan may not successfully contest his placement in the LTSU or the SMU simply on the basis that he disagrees with the exercise of discretion concerning his assaultive behavior.

### b. The Eighth Amendment Claim

McKeithan also asserts that the conditions of confinement in the LTSU and SMU violate the Eighth Amendment. To state an Eighth Amendment claim, the Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

-6-

McKeithan alleges that he has been subjected to housing with mentally ill inmates who make noise and throw bodily fluids (Doc. 1, p. 7), that he is not permitted to have newspapers, magazines or personal photographs, that he has been given only limited access to the commissary, and that his use of the telephone has also been restricted (Doc. 1, pp. 7-8).

In order to state an Eighth Amendment claim, the conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (internal citation and quotation omitted). Only "extreme deprivations" make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions -considered alone constitutionally insufficient- may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." See Wilson v. Seiter, 501 U.S. 294, 304 (1991).

Here, McKeithan has not alleged any physical deprivation which even arguably rises to the level necessary to state an Eighth Amendment claim. Instead, he merely alleges that which is

-7-

obvious: prisoners placed in the LTSU and SMU have fewer privileges than do prisoners in general population. Housing certain problem prisoners in isolation from other inmates is not a condition of confinement which violates the Eighth Amendment. "[S]egregated confinement in solitary or maximum security is not per se banned by the Eighth Amendment." Clifton v. Robinson, 500 F.Supp. 30, 34 (E. D.Pa.1980)(quoting Burns v. Swenson, 430 F.2d 771, 777 (8th Cir 1979)). Further, "'isolation from companionship, restriction on intellectual stimulation[,] and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render [solitary] confinement unconstitutional absent other illegitimate deprivations.'" In re Long Term Administrative Segregration of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999)(quoting Sweet v. South Carolina Dept. of Corrections, 529 F.2d 854, 861 (4th Cir.1975))(en banc). Viewing the record in a light most favorable to McKeithan, within the context of prison life, he has not established that he was denied "the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. The Defendants are entitled to summary judgment with respect to his Eighth Amendment claim.

### c. The Equal Protection Claim.

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated

-8-

should be treated alike." Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must show that: (1) the complaining person, compared with others similarly situated, was selectively treated; (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion; and (3) the defendant was motivated by an intent to punish or inhibit the exercise of the constitutional rights of a complaining party, or by a malicious or bad faith intent to injure the complaining party. Homan v. City of Reading, 963 F. Supp. 485, 490 (E.D. Pa. 1997) (citing Zahra v. Town of Southold, 48 F.3d 974 (2d Cir. 1995)); see also Government of the Virgin Islands v. Harrigan, 791 F.2d 34 (3d Cir. 1986).

With respect to this action, there are no allegations claiming that race played a part in the Moving Defendants' treatment of the Plaintiff. Furthermore, McKeithan has not presented any evidence showing that race played a part in the Defendants' decisions to place him in the LTSU or the SMU, or that any other similarly situated prisoner was treated differently. Summary judgment, therefore, is appropriate with respect to the Moving Defendants. Hedrich v. Board of Regents of University of Wisconsin System, 274 F.3d 1174, 1183 (7th Cir. 2001).

-9-

### d. The First Amendment Claim

McKeithan's next claim concerning his placement in the LTSU and the SMU is that he has been denied access to magazines and newspapers. Specifically, he asserts that, while in the LTSU, he was denied his subscriptions to two newspapers, as well as four magazines: "King Magazine," "Soap Opera Magazine," "Sister to Sister" and "Interview." (Doc. 1, p. 39). He alleges that the rules in the LTSU disallow prisoners from possessing any newspaper or magazine, and that this violates his right to free speech.

Although inmates retain certain protections afforded by the First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quotations omitted). In Turner v. Safley, 482 U.S. 78 (1987), the Supreme Court stated that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. The reasonableness of government action impacting a prisoner's constitutional rights is determined by considering the following four factors: (1) whether there is a valid, rational connection between the governmental action and a legitimate governmental interest; (2) whether there are

alternative means of exercising the constitutional right that remains open to prison inmates; (3) what impact an accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; and (4) whether ready alternatives exist for accommodating the prisoners' right at *de minimis* costs to valid penological interests. Id. at 89-90.

In Beard v. Banks, __ U.S. __, 126 S.Ct. 2572 (2006), the Supreme Court found that the Pennsylvania Department of Corrections LTSU rule that inmates in the unit are not permitted newspapers or magazines survived a First Amendment challenge. The ruling in Banks entitles the Moving Defendants to summary judgment.

### e. The Retaliation Claim

McKeithan also asserts that he has been retaliated against for filing grievances. Specifically, he alleges that his placement in the LTSU was in retaliation for his filing of grievances, and that his placement in the SMU was in retaliation for filing this lawsuit.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). However, to state a *prima facie* case of retaliation, a prisoner must demonstrate:

-11-

> 1) the conduct in which he was engaged was
> constitutionally protected; 2) he suffered adverse
> action at the hands of prison officials; and
> 3) **his constitutionally protected conduct was a**
> **substantial or motivating factor in the decisions**
> **to discipline him.**

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir.2002) (internal

citation and quotation omitted)(emphasis added). In this case,

as noted above, McKeithan has a long history of assaultive

behavior. In March, 2005, he committed further assaults, leading

to a determination that he should be placed in the LTSU. When

the LTSU was discontinued by the Department of Corrections in

January, 2007, McKeithan was moved to the newly-created SMU.

There is no competent evidence in this case, particularly in

light of the wealth of record evidence concerning McKeithan's

assaultive and disruptive behavior, which would allow a fact

finder to conclude that his placement in the LTSU and the SMU was

anything other than a response to his own inappropriate behavior.

## 2. The Medical Claims

The Court has already addressed the Plaintiff's medical

claims in the context of a motion to dismiss filed by other

Defendants in this case. The only claim which survived the

motion to dismiss was the one in which Dr. Herbick refused to

further test or treat the Plaintiff's pulmonary condition (Doc.

69). This claim concerning the pulmonary condition, though, is

not made against the Moving Defendants. Hence, a brief recitation

of the rulings already made by the Court concerning the remaining

medical claims will dispose of all claims against the Moving
Defendants.

The Plaintiff's first claim is that he was improperly
required to make co-payments for treatment. This does not
implicate the Eighth Amendment. Reynolds v. Wagner, 128 F.3d 166,
174-175 (3d Cir. 1997)("the deliberate indifference standard of
Estelle v. Gamble, 429 U.S. 97 (1976) does not guarantee
prisoners the right to be entirely free from the cost
considerations that figure in the medical-care decisions made by
most non-prisoners in our society . . .").

Likewise, the Plaintiff's claim that he was not permitted to
store his nitroglycerin pills in a bottle, but was instead
provided three pills at one time which he keeps in an envelope,
does not make out a claim of deliberate indifference. In Wayne v.
Barowsky, 175 Fed. Appx. 822 (9th Cir. 2006), the court affirmed
the grant of summary judgment with respect to a claim that
prison officials did not permit a prisoner to keep *any* of his
heart medication in his cell. The court found that even if there
was a delay in administering medication, it was "insufficient to
demonstrate deliberate indifference . . . ". Id. at 824. See
also, Brady v. Hegge, 221 F.3d 1347 (9th Cir. 2000)(affirming
dismissal of claim that dispensing medication at clinic rather
than cell violated Eighth Amendment); Wayne v. Kempthorn, 2005 WL
1631063 (D. Idaho 2005)(not allowing prisoner to self-medicate

-13-

with nitroglycerin does not rise to the level of deliberate indifference).

Clearly, if prison officials can deny prisoners the right to self-medicate altogether, McKeithan can not make out a claim of deliberate indifference by alleging that he was not permitted free access to his heart medication. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 105. At most, McKeithan disagrees with the manner in which his medication is being dispensed. That said, he has no constitutional right to dictate the manner in which medication is dispensed  -especially in the prison context. See Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1982)(superceded by statute on other grounds)(an inmate's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief under section 1983).

The Plaintiff also asserts that he was denied medication for skin, gas and hemorrhoid maladies. In his Complaint, he identifies the resulting injury as "itching and scratching" from his dry skin. Much more, however, is required to support an Eighth Amendment claim. The denial of medical treatment must result in "an unnecessary and wanton infliction of pain" or be "repugnant to the conscience of mankind." Estelle, 429 U.S. at

-14-

105-106. "[T]o state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105. The refusal to dispense "bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue . . . does not by its refusal violate the Constitution." Cooper v. Casey, 97 F.3d 914, 916 (7th Cir.1996); see also, Gibson v. McEvers, 631 F.2d 95 (7th Cir.1980)(a failure to treat symptoms of a common cold does not violate the Eighth Amendment). In considering whether an injury is serious, the court must also consider whether "denial or delay causes an inmate to suffer a life-long handicap or permanent loss." Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) cert. denied 486 U.S.1006 (1988). Thus, the Defendants' failure to provide the Plaintiff with ointment and hemorrhoid medication which caused "itching and scratching" does not rise to the level of an Eighth Amendment constitutional violation.

3. The Verbal Threats.

The Plaintiff makes allegations that several of the Defendants made verbal threats to him prior to and after he was placed in the LTSU. These assertions, unaccompanied by any allegation of physical injury, do not state a claim. See Burkholder v. Newton, 116 Fed. Appx. 358, 360 (3d Cir. 2004).

-15-

4. <u>Due Process Claims Concerning Disciplinary Hearings</u>.

McKeithan makes several claims concerning the conduct of disciplinary proceedings against him. He alleges that he was denied the opportunity to present videotape evidence at one hearing, witnesses at two others, and that the charges against him were false with respect to several misconducts filed against him.

No Due Process claim is stated when a prisoner alleges that misconduct charges were fabricated. <u>Smith v. Mensinger</u>, 293 F.3d 641, 653-654 (3d Cir. 2002). Indeed, all that is required of a misconduct proceeding is that the inmate be afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports. <u>Id</u>. This occurred in each instance as McKeithan was permitted to testify in his own defense with respect to all of the misconduct charges at issue. <u>Superintendent v. Hill</u>, 472 U.S. 445, 455,(1985) (requirements of due process are satisfied if some evidence supports decision by disciplinary board to issue sanctions). In each instance cited by the Plaintiff, the issue of whether or not he engaged in misconduct was, in effect, a swearing contest between him and the accusing officer. Hence, there was certainly "some" evidence supporting each misconduct charge.

Further, the Plaintiff''s second contention is that he was not permitted to call a witness at two hearings, and was not

-16-

permitted to present a video of the search of his cell at another
hearing when he was found guilty of possessing contraband. In the
context of a prison disciplinary hearing, the Fourteenth
Amendment's guarantee of due process requires the examiner to
grant the prisoner "an opportunity, when consistent with safety
and correctional goals, to call witnesses and present documentary
evidence in his defense." Walpole v. Hill, 472 U.S. 445, 454,
(1985). These protections are relaxed in situations where the
inmate is faced with something less than the loss of a liberty
interest. Flanagan v. Shively, 783 F. Supp. 922, 930 (M. D. Pa.)
aff'd 980 F.2d 772 (3d Cir.1992). However, disciplinary hearings
are not part of the criminal prosecution and are intended to be
informal and expeditious. Id. Therefore, the right to call
witnesses is a limited one constrained by reasonable
institutional concerns including, but not limited to, safety,
order, and retaliation. Officials must explain at some point, why
they refused the request to call witnesses. Ponte v. Real, 471
U.S. 491, 497, (1974). An unfavorable decision is not the same as
a denial of due process. Griffin v. Spratt, 768 F. Supp. 153, 158
(E. D. Pa.1991) rev'd in part on other grounds, 969 F.2d 16 (3d
Cir.1992).

Here, the Hearing Officer has provided reasons for not
permitting witnesses or allowing a view of the videotape. With
respect to the videotape, the Hearing Officer determined that the

-17-

seizure of contraband "occurred off-camera" and, hence, that the film was not relevant (Doc. 59, Ex. 9, p. 4). Likewise, the Plaintiff was twice refused permission to call another inmate as a witness on charges that he failed to stand for prisoner count when ordered to do so. In each instance, McKeithan's extensive record of citations for failure to stand for the count was cited, the reporting officer's testimony was found credible, and the request for another inmate to testify was denied because it "was not needed to determine facts." (Doc. 59, Ex. 14, p.2; Ex. 15, pp. 3-4). Thus, an explanation has been provided and, consistent with the wide discretion granted prison officials, this is sufficient. Wolff v. McDonnell, 418 U.S. 539, 566 (1974). The Moving Defendants are entitled to summary judgment on these claims as well.

### 5. Denial of Access to Grievance Procedures

McKeithan makes several claims concerning grievance procedures. He asserts that his grievances were improperly denied, that they were not responded to in a timely fashion, and that he was improperly placed on grievance restriction. None of these assertions states a constitutional claim.

Any claim addressed to prison officials' actions denying or responding late to grievances does not state a due process claim because the Plaintiff has no liberty interest in the grievance procedures. See, e.g., Villegas v. Terhune, 2006 WL 403886, *14

(E.D.Cal. Feb. 16, 2006). In fact, the court's analysis from

<u>Villegas</u> is relevant here:

> As to plaintiff's claims that he is denied to due
> process (or a right of access to the courts) with
> respect to the failure of the defendants to
> process his appeals, defendants are correct that
> there is no constitutional right to an inmate
> appeals process. Prisoners do not have a "separate
> constitutional entitlement to a specific prison
> grievance procedure." <u>Ramirez v. Galaza</u>, 334 F.3d
> 850, 860 (9 Cir.2003), <u>citing</u> <u>Mann v. Adams</u>, 855
> F.2d 639, 640 (9 Cir.1988). Even the non-existence
> of, or the failure of prison officials to properly
> implement, an administrative appeals process
> within the prison system does not raise
> constitutional concerns. <u>Mann v. Adams</u>, 855 F.2d
> 639, 640 (9 Cir.1988). <u>See also, Buckley v.</u>
> <u>Barlow</u>, 997 F.2d 494, 495 (8 Cir.1993); <u>Flick v.</u>
> <u>Alba</u>, 932 F.2d 728 (8 Cir.1991). <u>Azeez v.</u>
> <u>DeRobertis</u>, 568 F.Supp. 8, 10 (N.D.Ill.1982) ("[A
> prison] grievance procedure is a procedural right
> only, it does not confer any substantive right
> upon the inmates. Hence, it does not give rise to
> a protected liberty interest requiring the
> procedural protections envisioned by the
> fourteenth amendment"). Specifically, a failure to
> process a grievance does not state a
> constitutional violation. <u>Buckley</u>, <u>supra.</u> State
> regulations give rise to a liberty interest
> protected by the Due Process Clause of the federal
> constitution only if those regulations pertain to
> "freedom from restraint" that "imposes atypical
> and significant hardship on the inmate in relation
> to the ordinary incidents of prison life." <u>Sandin</u>
> <u>v. Conner</u>, 515 U.S. 472, 484 (1995). Defendants'
> motion should be granted on the ground that
> plaintiff's due process rights were [not] violated
> when he was put on appeal restriction.

<u>Id.</u>, at *16 (footnote omitted). Just as in <u>Villegas</u>, the

Plaintiff's procedural due process claim fails as a matter of law

and must be dismissed. <u>See</u>, <u>e.g.</u>, <u>Anderson v. Colorado Dept. of</u>

<u>Corrections</u>, 185 F.3d 873 (Table), 1999 WL 387163, *2 (10

Cir.1999) ("petitioner's allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner. The failure to conduct an investigation or respond to petitioner's grievances does not impose an atypical and significant hardship"); Metcalf v. Veita, 156 F.3d 1231 (Table) 1998 WL 476254, *2 (6 Cir.1998)("As to the conduct attributed to the warden personally, consisting of denying Metcalf's appeals and grievances, Metcalf did not state a due process claim because he suffered no atypical and significant hardship as a result."); Adams v. Rice, 40 F.3d 72, 75 (4 Cir.1994)("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.... We therefore affirm the district court's dismissal of this case as lacking a basis in law."); Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, *3 (6 Cir.2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.")

(citations omitted).[2]

## 6. The Denial of a "legal call"

McKeithan complains that he was denied a telephone call from his attorney on August 2, 2005, and that he was denied a private telephone conversation with his attorney on August 26, 2005. The prison does, however, provide for attorney correspondence by mail, or a non-contact legal visit which would be private. (Doc. 59, Ex. 19 at 2). Hence, the fact that the Plaintiff was not permitted to have a discussion with his attorney by the means of his personal choice is not a constitutional claim since he was not denied access to the courts, nor was he denied a confidential communication with counsel.

## 7. The Destruction of Personal Property

The Plaintiff's own pleadings indicate that he has no claim for the destruction of property, since he indicates that he

---

2. And, to the extent that Plaintiff is complaining that the Defendants failed to follow state rules regarding procedures to be followed in placing him on grievance restriction and thereby denied him procedural due process, his complaint fails to state a claim. The Supreme Court has observed that "[a] liberty interest is of course a substantive [in contrast to a procedural] interest of an individual; it cannot be the right to demand needless formality. Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right." Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983)(internal quotations, citations and footnotes omitted). See also Phillips v. Norris, 320 F.3d 844, 847 (8 Cir.2003) ("there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations.").

"mailed" the property home rather than have it destroyed (Doc. 1, p. 39). Hence, this claim lacks merit.

## C. **Summary**

It is respectfully recommended that the Motion for Summary Judgment filed by Defendants Putnam, Erickson, Wright, Wilson, Scire, Zaken, Gallucci, Galicki, Echowski, Van Fossen, McKeown, SGT. Layou, Mataloni, Tretinik, Abrams, Beard, Schaffer, Couterier, Stickman, Burke, Wynder and Lyons (Doc. 59) be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by December 17, 2007.

November 30, 2007                    s/Francis X. Caiazza
                                     Francis X. Caiazza
                                     United States Magistrate Judge

cc:
DENNIS MCKEITHAN L2-15
SCI Fayette
Box 9999
Labelle, PA 15450