IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS MCKEITHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-965 |
| | ) | |
| v. | ) | Chief Judge Lancaster |
| | ) | Magistrate Judge Bissoon |
| JEFFREY A. BEARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment filed by Defendants Yarcgwer and Myers (Doc. 168) be granted.[1]

### II. REPORT

This is a prisoner civil rights case that, pursuant to a remand from the United States Court of Appeals for the Third Circuit, has two discrete claims remaining against moving Defendants Yarcgwer and Myers: (1) Plaintiff's Eighth Amendment claim premised upon a failure to provide him treatment for eczema; and (2) a due process claim premised upon the charging of co-payments to McKeithan's prison account for pre-existing conditions in violation of prison regulations. Plaintiff has responded to the Motion for Summary Judgment, and the motion is now ripe for disposition.

**A. Legal Standard**

A party's burden in response to a well-pleaded motion for summary judgment is to present "specific facts showing that there is a *genuine issue for trial*" Fed. Rule Civ. Proc. 56(e)

---

[1] Defendants Beard, Shaffer, Stickman, Wilson and Zaken have not moved for summary judgment with respect to Plaintiff's claim that he was subjected to unconstitutional conditions of confinement in the Long Term Segregation Unit at SCI-Fayette.

(emphasis added), or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

    B. Analysis

        **1. Deliberate indifference - eczema.**

Generally, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1978). In the context of a claim regarding medical treatment, an inmate must show two elements to demonstrate a violation of his Eighth Amendment rights: 1) that he was suffering from a "serious" medical need; and 2) that the prison officials were "deliberately indifferent" to the serious medical need. Id. Notably, even where there is a serious medical condition, a prisoner also must present facts that would permit a jury to conclude that the defendant prison officials acted with a sufficiently culpable state of mind. An **intentional** refusal to provide **any** medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable. Young v. Quinlan, 960 F.2d 351 (3d Cir. 1992) (superceded by statute on other grounds). The requisite

state of mind may be established by circumstantial evidence.  Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (at the summary judgment stage, "subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk.").

However, where medical treatment is offered, the mere allegation of an opinion difference between a patient and a doctor, or between two medical professionals, does not amount to "deliberate indifference to a serious medical need."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) ("there may . . . be several acceptable ways to treat an illness."); Young, 960 F.2d at 358 n.18 (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief under Section 1983); Brownlow v. Chavez, 871 F.Supp. 1061, 1064 (S.D. Ind. 1994) ("The Eighth Amendment does not guarantee a prisoner's choice of a physician, a mode of treatment or a place of treatment, nor does or could it guarantee a particular outcome . . . .") (internal citations omitted).

Plaintiff here asserts that he was denied treatment for his skin condition beginning in March, 2005, when he was first transferred to SCI-Fayette.  It was at this point that Defendant Myers is said to have "discontinued" Plaintiff's medication, and the deprivation is alleged to have continued (with the exception of brief periods when Plaintiff was housed at SCI-Retreat and did receive treatment) until Plaintiff was transferred to yet another institution in March, 2007. Plaintiff has provided an affidavit (Doc. 200-20) wherein he asserts that he has experienced "excessive itching and dry skin for years" and that he was "prescribed treatment" in the form of "dove soap" and "A & D ointment" in 1993 while incarcerated at SCI-Camp Hill (Id., p. 1). Later, while incarcerated at SCI-Dallas, Plaintiff was "prescribed" A & D ointment and Lubriderm lotion (Id.).  Plaintiff asserts that Defendants Yarcgwer and Myers refused to give

3

him ointment or lotion and that "for two years at SCI-Fayette, [Plaintiff's] skin cracked and [bled] from the excessive scratching, due to the intense itching" (Id., p. 2).

Plaintiff also has offered an unsworn declaration from Michael Bundy, a state prisoner, who states that he witnessed "scars" and "blood" on Plaintiff's back, leg and t-shirt on two occasions in December, 2005 (Doc. 200-15). Inmate Eric Lyons indicates in another unsworn declaration the he noticed Plaintiff's back being "all cut up" on "a couple of occasions" during 2005 or 2006 (Doc. 200-19).

Plaintiff references his Exhibit 15, which is a page from his institutional medical records (Doc. 200-16). The records reflect that Defendant Yarcgwer saw Plaintiff on March 19, 2005, and Plaintiff demanded his medications that are listed as "suppositories for hemorrhoids" and "[L]ubriderm for dry skin" (Id.). In fact, Plaintiff himself confirms that Lubriderm lotion was the only treatment he was receiving for his dry skin at that time (Doc. 200, p. 6). On March 26, 2005, Plaintiff requested A & D ointment for his skin, but an exam by a physician (and not by either moving Defendant) revealed that Plaintiff's skin, although previously dry while he was at SCI-Dallas, was "now OK" (Id.).

Plaintiff's Exhibit 4 is a grievance Plaintiff filed on May 9, 2005, while he was at SCI-Retreat, wherein Plaintiff states that he was seen by medical personnel for complaints of dry skin, but he complains that he was charged a co-payment for the medical visit (Doc. 200-5, p. 2). Plaintiff's Exhibit 5 is a grievance filed by Plaintiff on April 25, 2006. Again, Plaintiff was seen by medical personnel for a complaint of eczema on April 4, 2006, while at SCI-Retreat, and he was provided A & D lotion. Plaintiff's sole complaint was that he was charged a co-payment (Doc. 200-6, p. 2). In another grievance filed on June 1, 2005, Plaintiff complained that he was denied Lubriderm and A & D lotion for his eczema while at SCI-Fayette, and that he is "dry and

4

itchy all day, scratching up [his] back" (Doc. 200-9, p. 2).  On April 6, 2006, Plaintiff completed an "Inmate's Request to Staff Member" complaining that he should be given A & D ointment for his eczema (Doc. 200-13).  Plaintiff did not complain that he was bleeding, but only that other jail personnel had given him A & D in the past.

Defendants have provided voluminous medical records detailing the medical treatment Plaintiff received during the relevant time period.  A spot on Plaintiff's leg was biopsied to rule out carcinoma on April 20, 2005 (Doc. 171-2, p. 38).  Plaintiff received A & D ointment for the incision area from May 3-27, 2005 (Doc. 171-3, pp. 21-23).  Defendant Myers discontinued the ointment for the incision area on May 27, 2005, with the approval of Dr. Prakcrb, but Plaintiff was again seen by Myers on May 31, 2005, when Plaintiff complained of itching over his entire body (Doc. 171-3, p. 21; Doc. 171-2, p. 29).  Plaintiff was directed to use the lotion that was being provided to him, without prescription, during his shower period (Doc. 171-2, p. 29).  On June 14, 2005, Myers ordered medication for scaling on Plaintiff's feet (Doc. 171-3, p. 20), and did so a second time on June 28, 2005 (Id.).

The medical records reflect that Plaintiff was seen by medical personnel numerous times during 2005 and 2006 for various complaints, only some of which were related to dry skin.  Plaintiff was provided A & D ointment or other medications for his skin condition on several occasions.  The Court is unable to locate any notation in the medical records that Plaintiff's skin condition caused him to bleed, or that Plaintiff complained to medical personnel that this had occurred.  Likewise, Plaintiff made no complaint of bleeding in any of the grievances he filed.

The first question to be addressed is whether Plaintiff has presented evidence that he suffered from a serious medical condition.  Recently the Court of Appeals for the Third Circuit noted that a "serious" medical condition is one "such that a failure to treat can be expected to

5

lead to substantial and unnecessary suffering, injury, or death." Tsakonas v. Cicchi, 308 Fed.Appx. 628, 632 (3d Cir. 2009), quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). Notably, the court then affirmed the dismissal of an Eighth Amendment claim premised upon a denial of treatment for "weight loss, eczema of the feet, seborrhea of the scalp, athlete's foot, constipation, and swollen knuckles on his right hand" on the basis that the prisoner had failed to allege a serious medical condition.

Other courts have reached similar results when faced with a claims of eczema, itching or dry skin. Sledge v. Kooi, 564 F.3d 105 (2nd Cir. 2009) (alleged eczema, back pain, stomach disorders, allergies, and asthma did not constitute a "serious medical need" on which to premise an Eighth Amendment claim of deliberate medical indifference ); Tasby v. Cain, 86 Fed. Appx. 745 (5th Cir. 2004) (Plaintiff's assertion that he developed a rash from being placed in restraints "does not establish that he suffered 'serious harm.' "); Gonzalez-Reyna v. Ellis, 2009 WL 2421482, at *3 (E.D. Va., July 27, 2009) (Trenga, J.) ("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation."); Samuels v. Jackson, 1999 WL 92617, at *1-3 (S.D.N.Y., Feb. 22, 1999) (Mukasey, J.) (prisoner's "[p]apules, vesicles, pustules, burrows, and intense itching resulting in eczema" did not constitute a sufficiently "serious medical need" for purposes of Eighth Amendment).

In determining whether Plaintiff has presented evidence that would permit a finding that he suffered from a serious medical condition, it must first be noted that Plaintiff has not provided details concerning when his skin allegedly bled, or how much bleeding occurred at any specific point. His affidavit lacks all relevant detail, and his attempts to provide supporting, unsworn documentation from other inmates would only permit a finding that these unsworn witnesses

observed that Plaintiff had some scratches and bleeding on a few, unspecified occasions. Further, Plaintiff did not mention bleeding in any grievance or any other contemporaneous written communication that is part of the record in this case. Indeed, the sole mention Plaintiff made in one grievance was that his back was "scratched up" and not that it was bleeding (Doc. 200-9, p. 2). Nor is there any mention of Plaintiff's skin being cracked and bleeding (or of a complaint by Plaintiff to that effect) in any medical record provided by the parties. On this record, a finder of fact could not possibly conclude that Plaintiff suffered anything more than sporadic, occasional bleeding associated with scratches on his back and legs. This is not evidence of a condition that "can be expected to lead to substantial and unnecessary suffering, injury, or death." Tsakonas, supra.

Second, Plaintiff clearly indicates in his affidavit that any bleeding that **did** occur was not due to his skin condition, but was instead the result of Plaintiffs scratching himself until his skin bled (Doc. 200-20, p. 2). If, as the cases cited above attest, "intense itching" and rashes causing pain and itching do not qualify as serious medical conditions, it is hard to discern how an inmate's choice to respond to itchy skin by scratching until he bleeds can transform an otherwise non-constitutional claim into the type of severe deprivation required to implicate the Eighth Amendment.

Finally, with respect to the seriousness of Plaintiff's skin condition, the fact that Plaintiff concedes his condition is controlled by the provision of two over-the-counter items (Lubriderm lotion and A & D ointment) is also evidence that his medical condition is not premised upon a medical condition likely to cause substantial and unnecessary suffering. See, e.g., Vaughn v. Kerley, 897 F.Supp. 1413, 1419 (M.D. Fla., 1995) ("A medical condition that was cured by Pepto-Bismol did not constitute a serious medical problem . . . ."). A denial of medical treatment

violates the Eighth Amendment only when it results in "an unnecessary and wanton infliction of pain" or is "repugnant to the conscience of mankind." Estelle, 429 U.S. at 105-106.  "[T]o state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105.  The refusal to dispense "bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue . . . does not by its refusal violate the Constitution." Cooper v. Casey, 97 F.3d 914, 916 (7th Cir. 1996).  Likewise, the failure to provide an over-the-counter ointment or lotion to prevent dry skin does not implicate the Eighth Amendment's prohibition against cruel and unusual punishment.

Even if the Court was to conclude that Plaintiff has presented evidence of a serious medical condition, the medical records submitted by Defendants conclusively establish that Plaintiff was repeatedly examined for his complaints of skin irritation by Defendants, and by prison physicians.  Plaintiff also repeatedly received creams and lotions for his skin condition during 2005 and 2006, and there is an indication in the medical records that lotion was available to Plaintiff on an as-needed basis in the shower area.  Thus, Plaintiff's complaints were not ignored, and he was provided some treatment.  Here, at most, Plaintiff's evidence reflects a disagreement with the treatment he was given, and he has not presented facts from which a reasonable fact-finder could properly conclude that Defendants Yarcgwer or Myers acted with the *scienter* necessary to establish an Eighth Amendment violation.  Young, 960 F.2d at 358 n.18 (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief under Section 1983).

Finally, if, as the Court of Appeals for the Third Circuit suggested in remanding this matter, a serious medical condition "might" be established in this case only by evidence that

Plaintiff suffered cracked and bleeding skin, then certainly a medical record devoid of any mention **by Plaintiff or Defendants** of such a condition would prevent a finding that Defendants acted with a sufficiently culpable state of mind.  "Deliberate indifference" occurs when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Here, the only evidence of complaints Plaintiff actually made to Defendants are of dry, itchy skin and of his back being "scratched up" on one occasion.  Plaintiff has failed to present evidence from which a jury could conclude that Defendants Yarcgwer or Myers were aware that he was suffering from "bleeding," or that any such bleeding was sufficient to raise a substantial risk of harm to Plaintiff.  Therefore, Plaintiff's evidence does not support a finding that Defendants knew that he was being exposed to a substantial risk of serious harm, or that they disregarded that risk.

   **2.  Procedural Due Process**

The appellate court also directed that this Court rule in the first instance whether the procedures in place for Plaintiff to challenge the charging of fees or "copayments" for medical treatment are sufficient for purposes of due process (Doc. 142-1, pp. 4-5).  It is clear that "[i]nmates have a property interest in funds held in prison accounts." Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997).  Accordingly, "inmates are entitled to due process with respect to any deprivation of money [from their accounts]."  Higgins v. Beyer, 293 F.3d 683, 693 (3d Cir.2002) (citations omitted).

Other courts that have addressed the issue have found that prisoners incarcerated with the Commonwealth of Pennsylvania Department of Corrections ("DOC") have adequate pre- and

post-deprivation remedies with respect to any co-payments deducted from their inmate accounts. Specifically, prisoners are given notice of the co-pay before it is deducted. Then, after the fact, inmates may challenge the propriety of a specific deduction through the DOC's Grievance Policy (DC-ADM 804). See, Reynolds v. Wagner, 936 F.Supp. 1216, 1228 (E.D. Pa. 1996), aff'd, 128 F.3d 166 (3d Cir. 1997) (advance notice of program's implementation and right to file grievance with respect to particular charges constitute adequate pre- and post-deprivation procedures sufficient to protect inmate's due process rights under inmate co-pay program); Morales v. Beard, 2009 WL 2413425, at 1 (W.D. Pa. July 31, 2009) (J. Conti) (same). Defendants Yarcgwer and Myers are entitled to summary judgment on the claim that a deduction of co-payments for medical treatment violated Plaintiff's right to procedural due process.

### III.   CONCLUSION

For the reasons set out in this Report and Recommendation, it is respectfully recommended that Defendants' Motion for Summary Judgment (Doc. 168) be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by April 26, 2010.

April 12, 2010                                                   s/Cathy Bissoon
                                                                 Cathy Bissoon
                                                                 United States Magistrate Judge

cc:
**DENNIS MCKEITHAN**
BB2253
SCI Mahanoy
301 Morea Road
Frackville, PA 17932